BRENGER, Respondent, vs. BRENGER, Appellant.

*February 1—February 22, 1910.*

*Divorce: Alimony: Allowance to husband: Division of property:*
*Wife's separate property: Powers of court: Statutes: Rights of*
*creditors: Exemptions: Trial: Findings of fact.*

1. Authority to allow permanent alimony to a party in a divorce·
   action or a portion of the property of the parties to one of them
   as a permanent settlement of their property rights, is referable,
   wholly, to the written law.
2. Permanent alimony is allowable out of the property and earn-
   ings of a divorced husband to his divorced wife, but not to the
   former out of the earnings and property of the latter.
3. The property of the husband and that of the wife derived from
   him, may be considered together in making a permanent ad-
   justment of property rights upon a judicial termination of their
   marital relations.
4. Upon such termination no part of the separate property of the
   wife, not derived from the husband, can properly be divested
   and transferred to the husband or burdened by his debts.
5. In adjusting property rights of the parties in a divorce action,
   in case an estate shall have been during coverture conveyed to
   the wife by the husband to compensate her for care of him, and.
   she shall have, without reasonable excuse; defaulted in that re-
   gard, the transfer should, by rules for judicial construction, be
   held to have been made upon condition subsequent, and, because
   of the default, should be restored to him and the condition thus
   created be then dealt with in settling matters respecting ali-
   mony to her or division of property between the parties.
6. Every provision for support in a judgment in a divorce action,.
   whether it requires payment of money at intervals or in a gross·
   sum, is to be regarded as alimony whether so expressly stated
   or not.
7. Judicial authority to make a division of property between the·
   parties to an action for a divorce is referable solely to sec. 2364,.
   Stats. (1898).
8. Under such section no power is given to take any part of the sep-
   arate property of the wife not derived from the husband and'
   transfer the same to the latter, while authority in that regard'
   is expressly negatived by sec. 2372, Stats. (1898).
9. An allowance for support, adjudged in a divorce action, does not
   constitute indebtedness to the party in whose favor the ·allow-
   ance is made which can be reached by creditors of the latter.

10. Payments in money required by the judgment in a divorce action. to be made by one party to the other as the portion of that other upon a division of the property of the parties may be reached by the creditors of that other.

11. The findings of fact in an action tried by the court should severally cover all of the material issues raised by the pleadings, carefully excluding all other matters, and the paper should be draughted from a strictly judicial viewpoint.

12. In settling the property rights of parties upon a judicial dissolution of their marriage contract it is proper, if not the duty of the court, to so provide as to preserve to them, subject to their individual rights after the separation of contracting to the contrary, their statutory exemptions from claims of creditors, while at the same time the indebtedness of each, in determining the property status to be dealt with in settling property rights, should be considered.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Reversed in part.*

Action for divorce. The facts as found or appear by the evidence are these:

Plaintiff and defendant lived together as man and wife for some eighteen years prior to their separation which occurred some time before the action was commenced. Each of the parties, when they intermarried, had children by a former marriage, all of whom are now able to care for themselves. There are two children by their union, both also being of sufficient age to care for themselves and be of some help to the defendant with whom they reside. At the time of the marriage each had property of the value of some $800. They soon purchased eighty acres of land for a home, each paying one half of the consideration. They took the title to the realty jointly and made their home on the land till the separation. Some time after the first purchase, the parties acquired forty acres of land additional, which was practically paid for jointly, and the title taken accordingly. The income of the property, together with the sum of $1,400 in money which came to the hands of the plaintiff, belonging to his

children by his first marriage, was expended in making improvements on the farm and acquiring personal property for use in connection therewith.

Plaintiff's entire money investment in the property, including the children's fund and excluding the income, is $2,200, with interest on $800 from 1894, and on $1,400 from 1898. The entire money invested by defendant on the same basis is $800, with interest from 1894. The total value of the property is about $6,200. Plaintiff owes one of defendant's children $400 for work done on the joint property. He is about sixty-one years of age and defendant fifty-seven. She is a strong capable woman in fairly good health and of good ability to care for herself. He, for more than fourteen years, has been so crippled and infirm as to be unable to do anything. He is now blind and needs personal attention by others. In 1906, for the purpose of compensating defendant for rendering him needed attention and supporting him in their home, he quitclaimed to her his half of the homestead eighty, worth at least $2,000. From that time she has possessed and used all of the property of the parties substantially as if it were her own. A few days after defendant obtained the conveyance she placed a mortgage on the property to obtain $600, which she gave to her son by the former husband, and she now owes the debt. There is a judgment debt against plaintiff for the money belonging to his children, which he used as aforesaid, of $2,847.35, rendered May 8, 1908, but it was said on the trial, that could be settled for $1,500, in case of payment being made within a reasonable time. For a long period before the action was commenced, defendant treated plaintiff in a most cruel and inhuman manner. Such treatment was reprehensible to a high degree, before the defendant obtained the deed aforesaid, but was worse thereafter. She made his life miserable and practically forced him from his home and to subsist by charity. For over a year he has been a public charge because of defendant's bad treatment. He

has made repeated unsuccessful efforts to become sufficiently reconciled with her to enable him to obtain support in the home, and was compelled to commence this action in order to secure a part of the property described and devote it to his own use instead of having to depend on charity. She is entirely to blame for the unhappy condition. He has promised to reimburse the town which relieved his necessities. That will take about $200. He is indebted to his attorney for upwards of $100.

On the situation aforesaid the court concluded, as matter of law, and adjudged accordingly, that plaintiff was entitled to a divorce as prayed for and to have out of the property $200 to reimburse the town; also $100, and such other sum as he might have to expend, as expenses of the litigation; also to have his clothing and carpenter's tools and an allowance of $25 per month, payable every three months during his life, on the first days of January, April, July, and October in each year, the same to be a lien on all of the real estate owned by the parties, or either of them, and that subject to such lien and other existing liens and debts mentioned, defendant was entitled to all the property, with a privilege to discharge the lien for the quarterly payments aforesaid by paying to the plaintiff $2,000, and that she should pay the costs of the litigation.

She appealed.

For the appellant the cause was submitted on the brief of *John Bottensek.*

For the respondent there was a brief by *Eberlein & Eberlein,* and oral argument by *F. A. Eberlein.*

MARSHALL, J. The circuit court seems to have decreed that appellant should pay, as alimony, to respondent $25 per month and burdened her property with a lien to secure such payment. Doubtless it was supposed such method of treating the complicated property situation, in view of the wholly

dependent character of respondent and the very reprehensible conduct of appellant, was the most equitable one to adopt; that from a business, and humane standpoint as well, respondent could best be provided for in that way, and appellant had no reason to complain which equity could recognize.

The difficulty with the conclusion reached, is that it has no legitimate basis in the law to rest upon.   A court of equity has very great power in a purely equity case and not much less, perhaps, in a purely statutory action as far as governed by equitable principles.   But such power does not go to the extent of violating the written law.

The statute (sec. 2364, Stats. 1898) provides for compelling the former husband of a divorced woman to pay her alimony out of his estate and earnings during their joint lives, but not for compelling a divorced wife to bear such a burden on account of the husband.   Neither the written nor the unwritten law justifies adjudging alimony to the former husband out of the divorced wife's property and earnings.

At this point we should say, in passing, we are speaking of alimony strictly so called, not division of property.   The whole subject having been covered by statute, with the evident purpose of superseding the system at common law, we must find warrant in the written law for the disposition of property complained of, or condemn it.

As said by a standard text-writer:

"No instance could occur at common law in which the court would decree alimony to the husband; and, in the absence of any statute creating such liability, the wife would not be liable to an action for alimony, although she is enabled by statute to hold and transfer real and personal property in her own name and right."    2 Nelson, Divorce & Sep. § 904.

True, the commentator suggests that under a system permitting a husband's property to be transferred to the wife equitable considerations would seem to justify burdening the same with alimony in favor of the husband.   But it is consid-

ered, that is a matter which the lawmaking power should deal with since the legislature planned to wholly provide for such matters, by the written law.   Other courts have so held.

In *Somers v. Somers*, 39 Kan. 132, 17 Pac. 841, the court observed that there was no judicial authority for giving the husband alimony.   "The domestic relations will have to be readjusted by the legislature, and an obligation cast upon the wife to support the husband, before such an action can be maintained," said the court, speaking evidently of an obligation to so support after a decree of permanent separation.   It must be remembered in this connection, that permanent alimony, alimony after dissolution of the marriage contract, is wholly a creation of written law.   It was not known to the common or ecclesiastical law.

One might fall into some confusion in studying this subject, as perhaps some text-writers have, if he did not keep in mind the principles above alluded to, upon reading here and there in elementary works that alimony may be granted in a divorce proceeding in favor of the husband, referring to such cases as *Small v. Small*, 42 Iowa, 111; *Barnes v. Barnes*, 59 Iowa, 456, 13 N. W. 441; *Garnett v. Garnett*, 114 Mass. 347, and some cases on the subject of temporary alimony.   Upon examining them it will be found they are grounded on plain statutory provisions.   Iowa Code 1873, sec. 2226; Gen. Stats. Mass. 1860, ch. 107, sec. 44.   The latter is as follows:

"When a divorce is decreed for any of the causes mentioned in sections 7 and 10 the court granting it may decree alimony to the wife, or any share of her estate in the nature of alimony to the husband."

Similar statutes exist in Rhode Island.   Pub. Stats. 1882, ch. 167, sec. 12.   Also in North Carolina, Washington, and other states.

True, the basis for alimony is the moral and legal duty as well, of the husband to support his wife, and, formerly, was without any corresponding legal duty of the wife to support

the husband. However by sec. 1502, Stats. (1898), as amended by ch. 224, Laws of 1907, the wife, "being of sufficient ability," of a husband who is poor and dependent, is liable for his support. But that deals with the domestic relations of husband and wife during the existence of the marriage contract. It is a part of the system for the relief and support of the poor. It supplies a legitimate ground for further legislation in respect to the obligation of a divorced wife,. but the legislature has not, as has been done in several other states, yet acted in the matter. The court must wait upon action by the lawmaking power.

In view of the foregoing, the law must be declared, thus :: The granting or refusing of permanent alimony in a divorce action, is wholly referable to the statutes. There being no statute in this state authorizing granting of permanent alimony in favor of the husband out of the wife's estate, the court should not exercise jurisdiction to do so.

It is suggested that the decree may be regarded as a division of property and the judgment sustained on that ground. It would be somewhat difficult to so regard it on principle, and in face of the adjudications of this court. The award to the respondent is expressly adjudged for "future support and maintenance." The conclusion of law upon which the decree is based, is in similar language, and is based on the finding of fact, "that the plaintiff is entitled to an allowance for support of $25 per month," as long as he "shall live." The allowance has all the characteristics of alimony and none of a division of property. Sums of money to be paid at intervals for support of a party to the marriage relation, in cases demanding alimony, are such and must be treated accordingly. *Bacon v. Bacon,* 43 Wis. 197. 'Every provision for *support* in such a case, whether the same be payable at intervals or in a gross sum, is to be regarded as alimony, whether so expressly stated or not.' *Blake v. Blake,* 68 Wis.. 303, 32 N. W. 48; *Maxwell v. Sawyer,* 90 Wis. 352, 63 N.. W. 283; *Palica v. Palica,* 114 Wis. 236, 90 N. W. 165.

The foregoing stated principles must not be lost sight of or allowed to produce confusion by loose administration, particularly because they have been long established in the jurisprudence of this state and apply in many situations as rules of property.

If it were proper to consider the allowance to respondent of a life annuity of $25 for his support, in connection with the option given appellant to discharge the obligation by paying the sum of $2,000, as a division of property, we would still, in an effort to sustain the judgment, have to deal with the insuperable difficulty that the court in making the division took into consideration property of the appellant which she did not derive from her husband, as part of the community property. Upon no other theory could the result embodied in the decree have been arrived at. Such theory is, in effect, plainly written in the findings. The entire value of all the property was about $6,200. The entire indebtedness of both parties, including what respondent had agreed to pay for his support after he was forced to leave his home, and the amount due for expenses of the litigation, was over $4,000. The value of appellant's property which she did not derive from her husband, appeared, with reasonable clearness, to be worth not less than $2,000, after deducting one half of the enhancement of the value of the realty by improper expenditure of the money belonging to respondent's children and her indebtedness to her son of $600. Thus the value of all property of both parties, less their indebtedness, was not more than the sum the court required appellant to pay respondent as a condition of being discharged from the burden of the annuity, such annuity and optional sum being evidently regarded as equivalents. In other words, appellant, in effect, was required by the decree to restore to respondent, for his own or his and his creditors' benefit, all the property she received from him and substantially all her other property as well. How can that be called a statutory division of property, or a just division from the standpoint of mere arbitration, even

if it were permitted to the court to so deal with the rights of parties?

The appellant, with all her faults, and evidently there were many, still was entitled to her legal rights and some degree of judicial mercy as well. Doubtless, in the mind of the learned court, there was very little of the latter element and we do not perceive anything in the record impairing his judgment in that regard, but the legal right of appellant to the full enjoyment of her separate property which she did not derive from her husband, was overlooked, and the legal effect of the disposition of property made was not appreciated.

The only right to make a division of property upon judicially dissolving a marriage contract is referable to sec. 2364, Stats. (1898), which provides that:

"The court may finally divide and distribute the estate, both real and personal, of the husband and so much of the estate of the wife as shall have been derived from the husband, between the parties and divest and transfer the title of any thereof accordingly, having always due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties and all the circumstances of the case. . . ."

Thus the jurisdiction affirmatively conferred to distribute the wife's property, is confined to such as she shall have derived from the husband. To render it doubly certain that no attempt would be judicially made to otherwise interfere with a wife's property, it was provided by sec. 2372, Stats. (1898), that "No judgment" in a divorce action "shall in any way affect the right of a wife to the possession and control of her separate property, real or personal, except as provided in this chapter. . . ." Thus it will be seen that the judgment here violated the affirmative and negative limitation of authority.

Looking to the effect of the judgment, it is no less bad. If it be considered a division of property, it not only includes the wife's separate property, not derived from her husband, as part of the fund for division, but practically took all there

is from appellant. If she should accept the option as to the $2,000, the sum she would then be required to pay and the debts would exceed the value of all property. If she should not take the option, the value of the annuity and the indebtedness would be an equivalent for the value of the property. Moreover the practical effect would probably be to take away from both in favor of creditors their statutory right of homestead and other exemptions. Her exemptions would be sacrificed to pay the annuity and the indebtedness, if not the latter alone, while the annuity, as respondent's portion on a division of the property, might be subject to claims of creditors. So it is quite within probability that, in case of an effort to pay the debts and support herself, and pay the annuity as well, appellant would not only utterly fail but both would be left in poverty notwithstanding at the start they had approximately $4,000 of exempt property.

If it could be held that the allowance of $25 per month is alimony, it would not be indebtedness which could be reached by creditors (*Kempster v. Evans,* 81 Wis. 247, 51 N. W. 327; *Daniels v. Lindley,* 44 Iowa, 567; *Jordan v. Westerman,* 62 Mich. 170, 28 N. W. 826); but whether support could be secured to respondent to any extent out of his nonexempt property to the prejudice of creditors, is by no means free from doubt.

So in any view we can take of the judgment, it not only violates appellant's legal and equitable rights, but leaves both parties, as regards property and future maintenance, in a very deplorable situation.

We are not unmindful of there being precedents where the situation was that of the wife having possessed herself of all the property and being wholly at fault, as in this case, and the court having dealt with the matter by allowing her to keep such property, requiring her to pay the husband semi-annually for life a sum thought to be equivalent to his portion, with an option to convert the property into money and divide it.

*Snodgrass v. Snodgrass,* 40 Kan. 494, 20 Pac. 203.   But it should be noted that the annual payments were not for alimony by name or specified to be for support.   They were expressly required on account of a division of property all of which was derived from the husband.

·We may say, in passing, as an indication of the onerous burden put upon appellant here, that, in the cited case, the circumstances were fully as reprehensible as regards the wife as in this instance.   The husband was an old man.   The net property was $5,525, or more than twice the net in this case. Yet the burden placed thereon in favor of the husband, as his share of the property, was only one third the burden required to be borne by appellant.

In the foregoing we have not lost sight of the fact that the judgment indebtedness is said in the findings to be for money received by respondent on account of his children, and to amount to $2,400, which can be compromised with the judgment creditors for $1,500, or less.   But it seems the finding is based on a stipulation made in open court that the judgment was entered "for the sum of $2,847.35, May 8, 1908," and testimony of the attorneys for the judgment creditor, that it could be "settled for the sum of $1,500, if done within a reasonable time and without further costs."   No payment seems to have been made on the judgment.   At this time it amounts to about $3,000.   The idea that it could be settled for $1,500 rests on mere suggestion of the judgment creditors' attorney as aforesaid.   There is no binding obligation to settle the claim for less than the amount due.   So it does not seem there is any legitimate basis for the finding that the judgment was only for $2,400, or that the claim could be settled for $1,500, and for an adjustment of the property rights of the parties accordingly.

We are rather forced to the conclusion that the finding belongs to a class, often found troublesome and sometimes fatal to a judgment; those made by judicial sanction of a draft prepared by attorneys for the prevailing party, following

some general suggestions from the bench as to the disposition of the case that would be made. · That is a very dangerous practice, in the judgment of the writer; a practice which fails to respond to the command of the statute that "the judge shall state in his decision separately: (1) The facts found by him; and (2) his conclusions of law thereon." As said, in effect, on another occasion, "Such practice, in the judgment of the writer, unless very closely guarded, might well be discontinued altogether."

"Experience shows that counsel, the most able, honorable, and conscientious, . . . after the close of a hotly contested case, are not in the frame of mind, ordinarily, best suited to drafting the findings which must express the judgment of the court. That is no criticism. It is only an acknowledgment of the natural infirmities of the most perfect of us. All are affected, regardless of ability or purity; the difference is in degree. The making of the findings is purely a judicial function." *Harrigan v. Gilchrist,* 121 Wis. 127, 396, 99 N. W. 909.

Except so far as sanctioned by custom, I know of no warrant for judicial findings to be made up of suggestions as to form and substance, by prevailing counsel, with or without general declarations from the judicial head as to conclusions. The calm sea level, so to speak, of the judicial view is required to respond to the spirit of the Code. It should be seen that these observations are on the writer's personal responsibility, but they are the result of surveys from the viewpoints of a practitioner, a circuit judge, and a member of this court. Doubtless where a judge scans proposed findings, eliminating everything not properly a part of such a determination as the statute contemplates, and seeing that all matters of material fact are covered, the preparation of the paper by counsel proves helpful and is without objection. A practice in that respect so guarded would greatly aid in the administration of justice and is, perhaps, necessary, especially in case of a heavy burden of judicial work.

If what has already been said does not fully justify the

criticisms made of the manner the findings were prepared, the following in connection therewith probably will:

There is no separate finding as to the value of the use of the farm during the time respondent was practically excluded therefrom, though there was ample evidence to justify one that it amounted to a considerable sum per year. There were sixty acres under cultivation, three horses, eleven cows, and all accompaniments of a farm property of considerable significance, and no debts to pay, or at least none were paid. In stating the amount of indebtedness of both parties, not only was the judgment debt of about $3,000 without warrant considered as $1,500, but only $400 additional was taken into consideration, making $1,900. There was omitted nearly $1,500 of the judgment indebtedness, $600 of appellant's indebtedness, $200 due from respondent for his support, his expenses of the litigation, amounting to at least $150, making the whole sum $4,500. Not only were there these omissions, but in determining the net property the finding is to the effect that the total gross amount is at least $6,200, leaving as the minimum net $5,300, whereas it will be seen, at a glance, that, on such basis, the net is $4,300, while in view of the other debts disclosed in the finding or the uncontroverted evidence the net is about $1,900, out of which appellant was required to pay, as before indicated, $2,000 or its equivalent. This is at the expense of repeating somewhat with substantially the same results as before.

The judgment as to the property must be reversed for the various fatal errors, prejudicial to the legal rights of the appellant, which we have pointed out. It is thought best in remanding the case, to give definite directions as to closing the matter which the reversal will leave open. In doing so we must take into consideration and give due effect to these particular matters:

(a) Under the facts respondent is not legally or equitably entitled to any alimony or any part of the appellant's prop-

erty.    He is not of sufficient ability to make provision for her. As between the two, she neither needs anything from him nor deserves anything.

(b) The undivided one-half of the homestead forty and one other having been deeded to appellant to secure support and nurture of respondent, in his helpless condition, during the balance of his life, and she having defaulted in that respect without any reasonable ground therefor and intensified the wrong by, in practical effect, driving him from home to be an object of charity, subject to the wrong being judicially redressed, a situation exists for application of the rule of *Glocke v. Glocke,* 113 Wis. 303, 89 N. W. 118, and similar cases, viz.: In case of a conveyance by an old person of his property to another to secure from such other support and attention during the rest of his days, and the consideration wholly failing, without reasonable excuse on the part of the grantee,—a court of equity will, by rules for construction, hold the conveyance to have been made upon condition subsequent and deal with the situation accordingly.

(c) While the court should not endeavor to frame a judgment so as to enable debtors to escape payment of their just debts, it should exercise care not to deprive them, in a case of this sort, of the benefits of the statutory policy to protect such persons in the enjoyment of sufficient property to reasonably protect them from coming to want.

(d) There is, as appears, substantially $4,000 of exempt property, the title to one half of which was in respondent before he made the transfer to appellant, which must be held for naught.   Such one-half was then free from any adverse claim and will be again upon the entry of the final judgment, except the $600 mortgage, which mortgage, as between the parties, should be regarded as a lien only on appellant's interest in the realty, the respondent being protected by the right of subrogation.

(e) The total money investment in the property by appel-

lant is $800, whereas she has incumbered the same as indicated for $600. Respondent's money investment in the property is $2,200.

(f) The incumbrance on the exempt property of the value of about $4,200 is limited to the $600 of appellant's indebtedness. The burden on appellant's half of one other forty consists of the $600 mortgage, and the burden on respondent's half of the two forties, other than the homestead, consists of such mortgage as to one forty and the judgment upon which there is due more than the entire value.

(g) The appellant having had the use of respondent's property for several years, under her unperformed agreement, she should repair that default to some reasonable degree. What will be a just equivalent for such default cannot be definitely ascertained, but it satisfactorily appears that it will take at least $300. It is thought best to fix it at such sum rather than to open the case for further litigation, and to direct that in preparing the final decree such sum shall be adjudged to respondent, with costs heretofore taxed.

(h) The $1,400, which according to the findings was expended in improving the joint property and, in the main, if not wholly, the homestead part, so far as now represented in the one-half interest owned from the first by appellant, is property derived from the husband and subject to division under sec. 2364, Stats. (1898), so in the full settlement of property rights authorized by such section, that should be taken into consideration and, under the facts, should be in greater part, if not all, restored to respondent.

To recapitulate for further definiteness, the judgment appealed from, except as to the decree of divorce and award of costs to respondent, should be reversed.

(1) The transfer of a one-half interest in two forties of land by respondent to appellant should be adjudged of no effect and the cloud on title created thereby should be judicially removed.

(2) The $600 mortgage placed on the two forties by appellant should, as to appellant and respondent, be adjudged a lien on the former's interest in the realty only, but without prejudice to whatever rights the holder of the mortgage has.

(3) The judgment should so provide that, if respondent or any person claiming under him shall pay any part of the $600 mortgage indebtedness to relieve his part of the property from the lien thereon, respondent or such person shall be subrogated to the rights of the holder of the mortgage, as to the other one-half, for the purpose of reimbursement.

(4) The decree should adjudge to respondent $300 on account of rents and profits appellant has unjustly appropriated out of his property, thus accomplishing a full equitable restoration of such property to him.

(5) The judgment should deal with the restored situation as above, by divesting appellant of one third of her remaining interest in the homestead forty and vesting the same in respondent, and by establishing the title, right of possession, and enjoyment of the property in the parties according to their respective interests, due provision being made for subrogation to protect respondent from loss on account of the $600 mortgage.

(6) The costs heretofore taxed in the court below in respondent's favor should be regarded as affirmed, and the costs taxed in this court in appellant's favor should not be enforced against respondent, otherwise than by offsetting the same against sums adjudged to him in the court below.

If the result creates an unpleasant situation for appellant, she must bear in mind that it has been made necessary by her own bad conduct, and that no other disposition of the property seems practicable which will deal justly and safely with the respondent and at the same time preserve to both their statutory rights as to homestead and other exemptions. If the appellant, having secured by her appeal her legal and equitable rights, now fails to recognize respondent's rights so

that, for the little time he may probably live, he can enjoy the property which has been acquired by his capital, management, and industry, the courts will, doubtless, find a way to deal with the matter effectually. Her best interest lies in submitting with becoming humility to the inevitable. The respondent under the judgment will be awarded his property rights. She must respect them or suffer the result of remedies which courts will furnish. Her complaint as to violation of her legal and equitable rights has been fully heard as a result of her appeal, while the new disposition of property matters will accord with the legal and equitable rights of both. She will have about $2,600 worth of property and no indebtedness to speak of, except that contracted for the benefit of her son. Respondent will have about the same amount of exempt property and $1,300 in value of other property but face an indebtedness to the amount of some over $3,600.

Of course, the disposition of property by the judgment will not prevent the parties by themselves, or through friendly intervention of others, from making a different disposition by contract. Probably they will find it difficult to make a much different disposition, in face of the indebtedness, without danger of sacrificing their statutory exemptions, but the way will be open for them to make such sacrifice, if they see fit, though it is hardly for the court to do it of its own motion.

*By the Court.*—The judgment appealed from as to all except the dissolution of the marriage contract and for costs is reversed, and the cause remanded for judgment embodying those parts not reversed and provisions as to property rights as indicated in this opinion.