HOERNIG, Appellant, vs. HOERNIG, Respondent.

*January 14 — February 26, 1901.*

*Divorce: Cruel and inhuman treatment: Division of estate.*

1. In an action by a wife for divorce on the ground of cruel and inhuman treatment it appeared that the net amount of property of the parties, over and above indebtedness, was $17,100, much of which had been accumulated in a business which the plaintiff had assisted in managing. Out of this the court awarded her $3,000, apparently in repayment of $1,500 put into the business by her several years previously, the homestead, worth $6,000, and her interest as beneficiary in an insurance policy worth $500. It also provided for the payment to her of $150 annually during the minority of an eight-year-old son whose custody had been awarded to her. *Held,* that the plaintiff had no just ground of complaint.

2. Where adultery was not alleged in the complaint in a divorce action, but facts from which, if true, a strong inference of adultery would arise were stated simply as acts of cruel and inhuman treatment, the court refused to find specifically as to such acts, but found generally that cruel and inhuman treatment was proven. *Held,* not prejudicial to plaintiff.

APPEAL from a judgment of the circuit court for Winnebago county: GEORGE W. BURNELL, Circuit Judge. *Affirmed.*

This is an action of divorce, brought by the wife on the ground of cruel and inhuman treatment. The divorce was granted, and the property of the parties divided, and the plaintiff appeals from that part of the judgment making division of the property and fixing the amount to be paid the plaintiff for the support of the son of the parties.

The facts were that the parties were married in 1884. One son, Carl Hoernig (still living), was born in 1892, as the issue of the marriage. The defendant was the proprietor of a meat market when the parties were married, and possessed a store building in Oshkosh, worth $8,000. The plaintiff had no property. Soon after the marriage, the plaintiff began to work in the meat market, keeping books,

waiting on customers, and having charge of the business during the defendant's absence. There is a dispute between the parties as to whether the plaintiff did this voluntarily or under compulsion, but the court found that she did it voluntarily. Her services were valuable in the business, and it prospered. In December, 1890, the defendant, in anger, struck and choked the plaintiff, and she left the defendant and went home to her parents; but in a few days, however, she returned on defendant's promise of kindness in the future, and continued to assist in the meat-market business as before. In 1893 the defendant went into the distilling business (his wife still managing the meat market), and lost nine or ten thousand dollars in it. Afterwards he went into the business of manufacturing caskets, and lost a thousand dollars in that. The meat-market business was successful, however, and some property was accumulated. The plaintiff claims, and the court found, that in 1894 and 1895 the plaintiff received from her father $1,500, and invested it in the defendant's business. The plaintiff also claims, and the court found, that the defendant continued to treat the plaintiff in a cruel and inhuman manner after her return in 1890, rendering it unsafe and improper for the plaintiff to live with him. She finally left the defendant in June, 1899, when she went to live with her parents at Fond du Lac, taking her young son with her.

At the time of the trial of the action the parties owned real estate in Oshkosh, the title to all of which was in the plaintiff, as follows:. A homestead, worth $6,000; a store, called the "Carr Bros. store," worth $9,000 (both of these parcels were covered by a mortgage for $5,500); another store, called the "Pelton store," worth $8,000, and mortgaged for $7,000; three other parcels of real estate, not mortgaged, worth, in the aggregate, $4,500. The parties also held three good notes, called the "Athern notes," of the face value of $3,000, which had also been transferred to

the plaintiff.   The value of all this property was found by
the court to be $30,500.   At the same time the defendant
had, as the court found, personal property as follows: Good
accounts, $3,000; stock in trade, $1,200; fixtures, $400; a
life insurance policy, partially paid, worth $500,— making
in all $5,100.   Thus the total property of the parties, as
found by the court (except household furniture of little value),
was $35,600, and the mortgage indebtedness was $12,500,
in addition to which the court found that the defendant
owed $6,000; making a total indebtedness of $18,500, and
leaving a net excess of property above indebtedness of
$17,100.   The proof showed that the homestead was con-
veyed to the plaintiff in February, 1894, and the balance of
the property of which she had title was conveyed to her in
August, 1897.   The plaintiff claimed that this last convey-
ance was made by the defendant for the purpose of delay-
ing and defrauding certain creditors, but the court found
against this contention.   The plaintiff had put nothing into
the property except the $1,500 before mentioned and her
labor, which is conceded to have been valuable.

Upon these facts the court awarded the custody of the boy
to the plaintiff, and directed the defendant to pay the plaint-
iff $150 per year for his support in semi-annual payments.
He also awarded her the three Athern notes as her separate
estate, and directed that the defendant assign to her her
beneficiary interest in the life insurance policy; also the
homestead, free of incumbrances; and directed that the de-
fendant pay off and remove the incumbrance thereon within
thirty days, and decreed that said incumbrance be a lien on
all the remaining real property until it was discharged by
the defendant.   The remaining property, real and personal,
was awarded to the defendant, and a conveyance of the real
property by the plaintiff was directed.   It appears that the
plaintiff had been receiving rental of the so-called Pelton
and Carr stores, and the court ordered that such rents be

paid to her up to January 1, 1900, and after that date to the defendant.

For the appellant there were briefs by *Giffin & Sutherland*, and oral argument by *D. D. Sutherland*.

For the respondent there was a brief by *Freeman & Freeman*, and oral argument by *C. N. Freeman*.

WINSLOW, J.   In what respect the plaintiff was wronged by the judgment in this case, we have been unable to perceive.   The title to all of the property which stood in her name at the time of the divorce had been derived by her from her husband.   It was, therefore, subject to division by the terms of the statute.   Stats. 1898, sec. 2364.   It is difficult to see how the fact that it may have been transferred in fraud of creditors can affect this right, because it was still property "derived from her husband."   But the court found on sufficient evidence that it was not transferred in fraud of creditors; hence the question is not here.

The court gave the wife the Athern notes — $3,000 — apparently in repayment of the $1,500 which she put into the defendant's business in 1894.   The net amount of all property over and above indebtedness was $17,100.   Deducting the amount of the Athern notes from this, leaves $14,100.   Out of this the court gave the plaintiff the homestead, worth $6,000, free of incumbrance.   This is a larger proportion of the estate than was allowed by this court in the cases of *McChesney v. McChesney*, 91 Wis. 268, and *Roelke v. Roelke*, 103 Wis. 204, which cases are quite similar in their facts to the case at bar.   It does not seem to us that the plaintiff has any just ground of complaint.

It is said that the court erred in refusing to find upon the question of adultery.   Examination of the complaint shows that no cause of action for adultery was stated or attempted to be stated.   Certain acts of the defendant were stated, from which, if true, a strong inference of adultery would

arise; but it was nowhere alleged that adultery was in fact committed, nor were the necessary allegations negativing plaintiff's connivance, etc., prescribed by Rule XXIX of the Circuit Court Rules, contained in the complaint. The acts alleged were plainly stated simply as acts of cruel and inhuman treatment. The court refused to find specifically as to these acts, but found generally that cruel and inhuman treatment during the continuance of the marriage was proven. We find no prejudicial error in this.

*By the Court.*— Judgment affirmed.