State ex rel. M., St. P. & S. S. M. R. Co. v. R. R. Comm. 137 Wis. 80.

STATE EX REL. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Respondent, vs. RAILROAD COMMISSION OF WISCONSIN, Appellant.

*September 12—November 27, 1908.*

*Statutes: Construction: Legislative intent: Judicial construction: Constitutional law: Public-service corporations: "Authority" of Railroad Commission: Delegation of authority: Regulation of corporations: Railroads: Amendment of articles of incorporation: Capital stock: Publication and filing of amendments: Increase of capital stock: Fees: Powers of Railroad Commission.*

1. The legislative intent in passing a law governs as to the scope thereof whether such intent is unambiguously expressed or is discoverable by the aid of rules for judicial construction.
2. The rules for judicial construction permit of looking at a legislative enactment as a whole, to the subject with which it deals, to its reason and spirit, of giving words a broad or narrow construction, going either way to the limits of their reasonable scope, of supplying omitted words clearly in place by implication, of changing one word for another in case of the wrong one being clearly used, and of thus reading out of the enactment and giving effect to the real intent though it may be found to be contrary to the letter thereof.
3. For the purpose of clearing up obscurities in a legislative act it should be read with reference to the leading idea thereof, that being regarded as such limitation upon particular words or clauses and expansion of others, within the scope thereof, in connection with that of words clearly implied, and the law be thus, if reasonably practicable, brought into harmony with such idea.
4. The leading idea of sec. 1753—3, Stats. (Laws of 1907, ch. 576), is that a public-service corporation shall not do any of the things conditionally prohibited except upon the authority of the Commission first obtained: the word "authority" not being used as suggestive of a delegation of power to determine what the corporation may do within its corporate powers, but of authority to determine whether the thing proposed to be done is within such powers.
5. The legislature cannot properly delegate authority to a commission to determine what power a corporation shall possess. It may clothe a commission with authority to determine whether

State ex rel. M., St. P. & S. S. M. R. Co. v. R. R. Comm. 137 Wis. 80.

the facts exist rendering the corporation competent to exercise its corporate powers in a given case.

6. A legislative grant of authority to a commission to determine whether a corporation may do a particular thing proposed by the latter to be done implies authority to determine corporate competency in that regard tested by the charter.

7. Sec. 1774, Stats. (1898), relative to amending articles of incorporation, refers only to corporations organized under ch. 86, Stats. (1898), which excludes railroad corporations.

8. A change of the authorized capital stock of a railway corporation is one of a fundamental character requiring an amendment to the articles of organization.

9. Such a change under sec. 1826, Stats. (1898), though not called an amendment, when effected is one in fact.

10. When by the policy of the written law the articles of organization of a corporation are required to be made a matter of public record and there is no express provision for making an amendment to such articles a like matter, by necessary implication such amendment, to be valid, must substantially follow, as regards publicity, the course of the original articles.

11. Notwithstanding the written law makes no express provision for making a change in the fundamentals of a corporation a matter of public record, the provision in sec. 1820, Stats. (1898), to the effect that such a corporation shall pay a prescribed fee for filing amendments to its articles of organization, recognizes that such filing is essential to the validity of such an amendment, and in view of the unwritten law in respect to the matter is equivalent to a legislative declaration in harmony therewith.

12. The Railroad Commission of this state has authority under sec. 1753—3, Stats. (Laws of 1907, ch. 576), to pass upon the competency of a railroad corporation to increase its capital stock and to refuse permission in that regard in case the articles of incorporation shall not have been so broadened as to cover the subject by a valid amendment which requires a public record of the change to be made in the office of the secretary of state and compliance with the conditions precedent thereto in respect to the payment of fees.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

*Mandamus* proceedings to require the State Railroad Commission to furnish the relator with a certificate of authority to issue stock in addition to that originally authorized in its

VOL. 137 — 6

articles of organization.    The Commission refused to furnish such certificate because the relator had not filed the amendment to its articles of organization increasing its capital stock with the secretary of state.    The relation showed facts essential to favorable action upon its request for the certificate unless filing of an amendment to its articles of organization increasing its capital stock was necessary.    There was a motion to quash the alternative writ, which was denied upon the ground that the relator's petition showed that it was entitled to the certificate demanded because a railroad corporation, in order to increase its authorized capital stock, is not required to file an amendment to its articles of organization covering the subject or evidence thereof, with the secretary of state.    The appeal is from the order overruling the motion to quash.

For the appellant there was a brief by the *Attorney General* and *Russell Jackson,* deputy attorney general, and oral argument by *Mr. Jackson.*

For the respondent there was a brief by *John B. Sanborn,* and oral argument by *Mr. Sanborn* and *Mr. A. H. Bright.*

The following opinion was filed September 29, 1908:

MARSHALL, J.    This appeal involves questions of much importance to corporate and general interests, viz.: What is the scope of the Railroad Commission's power relative to the issue of stock, stock certificates, bonds, or other evidences of indebtedness by railroad corporations, and is such a corporation, like corporations in general, required, as a condition precedent to increasing its capital stock originally provided for, to amend its articles of organization and to that end file a properly authenticated copy of the amendment with the secretary of state and pay $1 for each $1,000 of the increase as a fee for such filing?    It would seem that matters of such great moment ought to be readily determinable by the plain, unmistakable letter of the written law instead of being in-

volved, as they seem to be here, in language so ambiguous as to require a reading thereof in the light of rules for judicial construction, not called into activity except in cases of necessity, in order to enable one to see sufficient sense in the enactment to indicate satisfactorily the legislative purpose and determine that such purpose is sufficiently expressed to warrant effective recognition thereof.

The first question suggested is raised by counsel for respondent challenging the jurisdiction of the Commission to determine any question of fact as regards the legal capacity of a railroad corporation to issue new stock and permit or refuse to permit such issue according to whether the status disclosed satisfies statutory requirements. That turns on the meaning of this language in sec. 1753—3, Stats. (pp. 411, 412, ch. 576, Laws of 1907):

"No public-service corporation shall hereafter issue any stock, stock certificates, bonds or any other evidences of indebtedness payable in more than one year from date, until it shall have first obtained authority for such issue from the Railroad Commission as herein provided. The proceedings for obtaining a certificate of such authority from said Commission and the conditions of its being granted by said Commission shall be as follows:

"(a) In case the stocks, certificates of stock, bonds or other evidences of indebtedness are to be issued for money only the corporation shall file with the Commission a statement, signed and verified by its president and secretary, setting forth (1) the amount and character of the proposed stocks, certificates of stock, bonds or other evidences of indebtedness, (2) the purposes for which they are to be issued, (3) the terms on which they are to be issued; and (4) the total assets and liabilities of the corporation in such detail as the Commission may require. The Commission may also require the corporation to furnish any further statements of fact or evidence that it may deem pertinent to the inquiry. The Commission shall thereupon issue to the corporation a certificate stating the amount, character, purposes and terms on which such stocks, certificates of stock, bonds, or other evidences of indebtedness are proposed to be issued."

That the quoted language is ambiguous and so a subject for judicial construction does not admit of reasonable controversy. It is ambiguous in its literal sense, in that a corporation as a condition precedent to the right to issue new stock is required to "have first obtained authority for such issue from the Railroad Commission," to be evidenced by "a certificate of authority from such Commission" and by specified proceedings and upon specified conditions, yet no such certificate in terms is required to be issued but only one "stating the amount, character, purposes and terms on which the stock," etc., is proposed to be issued. No conditions are in terms expressed except that there shall be placed before the Commission certain specified evidence and such other "statements of fact or evidence" as the Commission "may deem pertinent to the inquiry."

It will be seen that the literal sense of the law might be complied with as regards every duty on the part of the corporation precedent to that of the Commission to furnish the certificate, without a disclosure showing legal capacity to issue new stock and even though it might show incapacity in that regard. Taking the law literally, compliance with the special requirement, if any, made by the Commission, is not a condition precedent to the issuance of the certificate. The requirement being brought to the notice of the Commission, "thereupon," in the words of the law, it shall "issue . . . a certificate," etc. Not, as before indicated, in terms of authority, but merely as to certain facts disclosed regardless of whether they show legal capacity to do the proposed thing. Yet such certificate is spoken of as one of authority, designed, it would seem, to show, *prima facie* at least, validity of the proposed act upon which purchasers may rely in investing and the public may rely in submitting to the burdens necessary to compensate for the use of the investment and maintain it at its representative value. Such an outcome of the legislation would be so manifestly absurd

and out of harmony with modern thought as to legislative regulation of corporate affairs, as to conclusively indicate that some different result was intended by the lawmaking power, which it either failed to express at all or left obscured by the omission of words to be implied or the use of words in a sense far different from their natural, ordinary meaning, or both.  It is the office of judicial construction to supply such omitted words and discover and give effect to such sense, if it can be found within the reasonable scope of the language, express and implied, used by the legislature, and to declare the law to be according to the intent so indicated.

The actual judicially determined legislative intent must always govern if expressed at all so as to be discernible by the searchlights which the court possesses.  They permit of looking at a written law as a whole, to the subject with which it deals, to the reason and spirit thereof, to give words a broad or narrow construction, going either way to the limits of their reasonable scope, to supply omitted words which are clearly in place by implication, to change one word for another in case of the wrong one being clearly used, and so read out of the enactment the real intent, even though it may be contrary to the letter thereof.  *Nichols v. Halliday,* 27 Wis. 406; *Haentze v. Howe,* 28 Wis. 293; *Harrington v. Smith,* 28 Wis. 43; *Palms v. Shawano Co.* 61 Wis. 211, 21 N. W. 77; *State ex rel. Heiden v. Ryan,* 99 Wis. 123, 74 N. W. 544; *Wis. Ind. School v. Clark Co.* 103 Wis. 651, 659, 79 N. W. 422; *State v. Railway Cos.* 128 Wis. 449, 479, 108 N. W. 594; *Pape v. Carlton,* 130 Wis. 123, 109 N. W. 968.

One of the most familiar and safe canons of construction may be stated thus: For the purpose of clearing up obscurities in a law it should be read with reference to the leading idea thereof,—such idea being regarded as such limitation upon particular words or clauses and expansion of others

within the scope thereof, in connection with that of words clearly implied,—and be thus, if reasonably practicable, brought into harmony with such idea.

The learned counsel for respondent, recognizing the force of the broad principle stated, insist that the leading idea of the law in question is publicity; that a corporation desiring to do any one of the things, authority for which is required to be obtained from the Railroad Commission, shall fully inform the public in that regard through its representative; the Commission, leaving state and individual interests to invoke such remedy as may be available for any wrongdoing. If the premises were sound the result contended for would not be difficult to reach, but they seem to be manifestly unsound.

Considering the situation the legislature had to deal with, the law must be regarded, unmistakably, as intended to prevent improper issues of corporate stock or securities; as a remedy for a recognized existing evil, to be applied at the very boundary between right and wrong, not a mere means of remedying wrong after its occurrence or of making wrongdoing public and giving it the semblance of right as a compensation for publicity, which would be the result of counsel's contention, if it were adopted.

The key to the law is contained in the declaration, in effect, that no corporate stock, stock certificates, bonds, or any other evidence of indebtedness payable in more than one year from the date thereof shall be issued by any public-service corporation except upon the authority of the Commission first obtained. That, of course, does not imply authority for the Commission to interfere with the mere business policy of a corporation within its corporate powers, which, as suggested by counsel for respondent, would be an illegitimate delegation of authority. *State v. G. N. R. Co.* 100 Minn. 445, 111 N. W. 289. It does, unmistakably, show a purpose to lodge in the Railroad Commission power

to pass upon questions of fact involved in whether a public-service corporation, desiring to do any of the things mentioned, is competent in that regard, having reference to the written law on the subject. {The seat of original power is the legislature. It cannot legitimately delegate it. It can properly clothe a commission with capacity to determine whether corporate rights created by the legislature are exercisable, that depending upon the existence of facts satisfying legal conditions precedent in that regard, and give to the corporation invoking its jurisdiction evidence of its determination. It would be highly unreasonable to conclude that the legislature purposed empowering the Commission to authorize the doing of the things mentioned in the act in any other sense.

The grant of power to authorize suggests by necessary implication the grant of power to pass upon the underlying questions. The former includes the latter. True, the law prescribes how the authority of the Commission shall be obtained, as before indicated, and does not expressly declare that it shall pass upon the general question of legal capacity by finding the facts in that regard, but contemplates an inquiry as broad as the subject matter in hand, to wit: whether the appellant ought to be permitted to do the proposed act.

The language that the Commission may require the corporation to furnish any further statement of fact or evidence that "it may deem pertinent to the inquiry" is very significant and suggestive. What inquiry? Necessarily, it seems, that as to whether the applicant for the permit is competent to do the. proposed thing subject to the indorsement of the Commission in. that regard, evidenced by what the law characterizes as its "certificate of authority."

While, immediately following the language last quoted, it is said the Commission "shall thereupon issue to the corporation a certificate," etc., not waiting according to the literal sense even for compliance with the requirement as to fur-

nishing evidence, the only reasonable conclusion which can be arrived at, it seems, is that the power to require production of all evidence "pertinent to the inquiry" implies that the inquiry shall wait upon compliance with the requirement, and that the case made by the corporation in the whole shall satisfy the essentials of competency to receive the permit asked for.

Thus the whole act is made to harmonize with the general purpose, the leading idea, before indicated. It were far better if the act had provided, according to such manifest purpose, that no public-service corporation shall hereafter issue any stock, stock certificates, bonds, or any other evidence of indebtedness payable in more than one year from date until it shall have obtained a certificate of competency from the Railroad Commission. In case of stock, certificates of stock, bonds, or other evidences of indebtedness to be issued for money only, the corporation shall file with the Commission a statement signed and verified by its president and secretary setting forth specifically (as in the law indicated) the facts, and furnish the Commission with such other evidence as it may deem pertinent to the inquiry, showing competency to do the proposed act, whereupon the Commission shall issue thereto its certificate evidencing the same and stating the amount, character, purposes, and terms on which the stock, certificates of stock, bonds, or other evidences of indebtedness are proposed to be issued. The words of the law in question should be restrained or expanded, within reason, and words deemed to be in place clearly impliable, necessary to express that purpose which can be accomplished, in the opinion of the court, without any violence to language and in accordance with familiar rules for judicial construction heretofore indicated.

Passing the question of jurisdiction, which, as seen, is resolved in favor of appellant, we come to the one as to whether a railway corporation, the same as public-service

corporations generally, in order to increase its capital stock must amend its articles of organization and file an authenticated copy of such amendment with the secretary of state.

It is conceded that under sec. 1772, Stats. (1898), as it originally existed, public-service, including railway corporations, in common with corporations generally, with few exceptions not material here, were made liable to the state, in case of an increase of their capital stock, in a specified sum per thousand dollars of such increase, but discharge of such liability was not made a condition precedent to the increase. The language of the section was this:

"Every corporation organized and doing business under the laws of this state which may hereafter increase its capital stock shall pay as a fee therefor fifty cents for each one thousand dollars of increase," etc.

Payment of the fee had no connection with filing the copy of the amendment to the articles of organization with the secretary of state. The recording of a copy authenticated in a specific manner in the office of the register of deeds where the original articles were recorded, as to all corporations organized under ch. 86, Stats. (1898), effected the change and thus fixed the obligation of the corporation to the state to pay the prescribed fee, the only effect of failure to file a like copy with the secretary of state being liability of the corporation to a penalty of $25. The law was so changed by ch. 507, Laws of 1905, as to corporations organized under such chapter as to make filing of a copy of the amendment with the secretary of state a condition precedent to its validity, and made payment of the fee for increasing the capital stock a condition precedent to such filing. The law as it now stands is worded thus:

"Every . . . corporation [with some exceptions not including public-service corporations] organized and doing business under the laws of this state shall pay . . . for filing an amendment increasing its capital stock . . . in addition to said fee of ten dollars, one dollar for each one thousand dollars of increase." Sec. 1772, Stats. (Supp. 1906).

The words "every corporation," etc., in the former law, conceded to include railway corporations, is preserved in the revised section, yet it is insisted here, and was successfully in the court below, that they are now excepted because sec. 1826, Stats. (1898), as amended by ch. 461, Laws of 1901, covering the subject of increasing the capital stock of railway corporations, provides that it may be done by a vote of the stockholders, conditioned, however, that "no vote in favor of such increase shall take effect until the proceedings of such meeting, showing the names of all of the stockholders voting therefor and the amount of stock owned by each, shall be entered upon the records of such corporation," nothing being said expressly about the corporate action being in the form or nature of an amendment to the articles of incorporation or notice of the change being filed in the office of the secretary of state, except that upon increased stock being issued "a report showing the amount issued and the purposes to which it has been, or is to be, devoted," etc., shall be filed. That is to say, a fee for increase of capital stock of a corporation is now only required for filing an amendment to the articles of organization providing for such increase, and railroad corporations are not required expressly to file any such amendment.

It was conceded on the argument, as we understand, and as seems manifest, that if railway corporations were favored, as counsel for respondent insist, it was by an inadvertence. Such a discrimination would be so highly unreasonable that it would be absurd to claim that any such intent was in the legislative mind. Therefore it must have been supposed by the lawmaking body that such corporations were required by existing laws to amend their articles of organization in order to increase their capital stock, and that in order to effect such an amendment it is necessary to file evidence of the change in the office of the secretary of state where the original articles of organization are filed (sec. 1820, Stats.

1898); the only place where any public record thereof is required. However, if there be no reasonable basis for such supposition, then the court cannot repair the mistake and, of course, should not and will not make any attempt to that end.

It must be conceded that proceedings effecting an increase of capital stock of a railway corporation, in practical effect, amend the original articles of organization, since one of the significant requirements thereof is that they shall specify "the amount of the capital stock of the corporation, the number of shares of which it shall consist, and if such stock shall consist of common and preferred stock, the number and amount of shares of each class." Sec. 1820, Stats. (1898). An increase of capital stock is a change of fundamental character. 1 Thomp. Comm. on Corp. § 78. But it is insisted it conclusively appears that no other act is essential to complete such an amendment as the one in question except such as are indicated expressly in sec. 1826, Stats. (1898), as amended by ch. 461, Laws of 1901, since that provides that "no vote in favor of such increase shall take effect until the proceedings of such meeting, showing the names of all of the stockholders voting therefor and the amount of stock owned by each, shall be entered upon the records of such corporation," and does not provide for filing anything with the secretary of state in advance of an actual issue of new stock. Though standing alone that might be the natural inference, if the law otherwise, by necessary implication, indicates that the articles of organization as amended must be evidenced by a record in the office of the secretary of state, there is no repugnance, since that might be and yet the amendment be made ineffective without the existence of the corporate record which sec. 1826 requires.

Counsel for appellant point to the decision of the federal court in *Fishback v. F. du L. & N. E. R. Co.* 158 Fed. 88, holding that noncompliance with sec. 1774, Stats. (1898), in case of an attempt to amend the articles of or-

ganization of a railway corporation, is fatal to the proceedings; that such section applies to all corporations. It is sufficient to say the federal court overlooked the fact that the section, by its terms, only applies to corporations organized under ch. 86, Stats. (1898), and that railway corporations are organized under ch. 87.

Our attention is further called to 1 Thomp. Comm. on Corp. § 238; *Day v. Mill-Owners' Mut. F. Ins. Co.* 75 Iowa, 694, 38 N. W. 113; *Altoona Gas Co. v. Gas Co.* 17 Pa. Co. Ct. Rep. 662, and 10 Cyc. 233, to which may be added 7 Thomp. Comm. on Corp. § 8181, and *Anderson v. Railroad Co.* 91 Tenn. 44, 17 S. W. 803, holding or suggesting that in the absence of any requirement for making an amendment to corporate articles a matter of public record its validity must wait upon its being so made where the original articles are filed or recorded. The text in Thompson at sec. 8181 is this:

"If the governing statute requires a charter to be registered in a certain public office, it may fairly be assumed that an amendment to such charter must, to be valid, be so registered."

The cited cases bear out that view.

It is significant that while the statutes require articles of organization of railway corporations, the same as those of others, to be of record in the office of the secretary of state and there are provisions for changing such articles as to fundamentals in several material particulars, no such change is spoken of as an amendment to such articles. According to the theory of counsel for respondent the corporate powers of a railway corporation may be radically changed without any public record being made thereof, so the original articles of record with the secretary of state will not furnish any safe indication of the scope of such powers. That is out of harmony with the entire policy of the law as to publicity regarding corporate charters. A more reasonable theory is

that the legislature assumed that in order for a corporation to make any change in its corporate powers authorized by the statutes, it must do so by amendment properly adopted and made a matter of record where the original articles are filed.

In sec. 1820, Stats. (1898), language occurs which we regard as an unmistakable legislative recognition of the condition of the unwritten law as above indicated. It provides for filing in the office of the secretary of state of the original articles of incorporation of a railway company as a condition precedent to corporate existence and that "for filing such articles the secretary of state shall collect the fee prescribed in sec. 1772 for filing articles under ch. 86, and if amendments to such first mentioned articles are filed he shall collect the fee fixed by such section for filing amendments thereunder." There was no reason whatever for the language as to amendments unless the legislative idea was that filing the same was essential to their validity. On the whole, we conclude that not only the reasonable but the necessary implication from the statutes is that such filing is essential and that the legislative recognition thereof above indicated has the force of an express declaration.

The result of the foregoing is that the Railroad Commission had jurisdiction to pass upon the competency of the respondent to issue the proposed new stock and rightly decided in the negative. Therefore the order appealed from is wrong and must be reversed.

*By the Court.*—The order is reversed, and the cause remanded for further proceedings according to law.

A motion for a rehearing was denied November 27, 1908.