STATE EX REL. MONROE COUNTY, Appellant, vs. VERNON COUNTY and others, Respondents.

*January 13—January 30, 1912.*

*Hospitals for the insane: County chargeable with patient's support: Correction of mistake: Board of control: Second application for correction: Statute construed.*

Where, upon the application of a county to which the support of an inmate of a state hospital or county asylum has been charged, the state board of control has made an order, pursuant to sec. 591, Stats. (1898), that such support is chargeable to another county, the latter county may, even though it has not appealed from such order and the time limited for taking an appeal has expired, apply for relief from the burden imposed by such order, and upon such an application it may be claimed,

and the board of control has power to determine, that the county first named was in fact properly chargeable with such support. Nothing in the language of said sec. 591, giving the county named in the first order the right to apply for relief therefrom, limits its right to litigate the question of liability so as to exclude the county with which that question was previously litigated. VINJE, J., WINSLOW, C. J., and MARSHALL, J., dissent.

APPEAL from a judgment of the circuit court for Monroe county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

The cause was submitted for the appellant on the brief of *Naylor & McCaul,* of counsel, and *T. P. Abel,* district attorney, and for the respondents on that of *J. Henry Bennett,* district attorney.

BARNES, J. On January 2, 1906, one Olaus Sletten, then residing in *Monroe County,* was committed to the state hospital for the insane at Mendota. In May, 1906, the *County of Monroe,* acting under sec. 591, Stats. (1898), submitted proofs to the state board of control showing or tending to show that Sletten had not been a resident of *Monroe County* for a period of one year before his commitment, but was in fact a resident of *Vernon County.* An order to show cause why the *County of Monroe* should not be relieved from the expense of keeping said Sletten at the Mendota hospital, and why *Vernon County* should not be charged with such expense, was procured from the state board of control. *Vernon County* did not appear on the hearing of such order, and on July 5, 1906, said board determined that *Monroe County* should be relieved of any charge on account of said Sletten and that *Vernon County* should pay such expense. No appeal was taken from this order. On June 16, 1908, *Vernon County* petitioned the aforesaid board for a rehearing in said matter, and thereafter notice was served by *Vernon County* on *Monroe County* that the former would move the state board, at a time and place stated, for an order relieving *Ver-*

*non County* and charging *Monroe County* with the cost of keeping said Sletten.   This motion was heard on August 4, 1908.   *Vernon County* appeared in support of the motion, and *Monroe County* appeared specially and objected to the jurisdiction of the board to hear the motion.   This objection was overruled, and on January 6, 1909, the board of control made an order revoking its former order and determining that *Monroe County* should be charged with the cost of maintaining said Sletten.   The relator in this proceeding sued out a writ of *certiorari* to review this last determination.

The circuit court awarded judgment quashing the writ, and the relator appeals from that judgment.   The following reasons are urged for a reversal of the decision of the circuit court: (1) The order of July 5, 1906, not having been appealed from within one year, as provided by sec. 592, Stats. (1898), it became final and conclusive between the parties hereto.   (2) Two years having elapsed and neither county having taken an appeal from the said order of July 5, 1906, the board was without jurisdiction to take any further action in said matter; and (3) there was no evidence produced before the board to show that Sletten had resided in *Monroe County* continuously for the period of one year before his commitment.

The first two contentions of the appellant involve the construction of secs. 591 and 592, Stats. (1898).   In reference to the third contention, we think there was some evidence to support the conclusion of the state board of control to the effect that the residence of Sletten in *Monroe County* was sufficiently established to warrant the expense of his keep being charged to that county.   We do not deem it useful to discuss this question at any greater length.   The bulk of counsel's argument is devoted to the two other points raised.   Were it not for the last sentence of sec. 591, Stats. (1898), we would have no hesitancy in saying that the position taken by the relator was unassailable.   There is a provision for notice to

30]        · JANUARY TERM, 1912.        277

State ex rel. Monroe County v. Vernon County, 148 Wis. 274.

the parties in interest and for a trial before the board of control and for an appeal from its judgment at any time within one year by either party.   The law usually aims to bring controversies to a speedy end, and the provision giving one year in which to take an appeal is liberal as to time and ought to enable the parties to protect their rights by resorting to this remedy.   But it was competent for the legislature to provide that the order of the board of control should not be final even if an aggrieved party failed to avail itself of the right to appeal, and we think that it has done so by the last sentence of sec. 591, Stats. (1898), which reads as follows:

"From and after the making of such order such inmate's support shall be charged in accordance therewith; provided, that the county named in such order may, in like manner, apply to said board for relief from the burden thereby imposed, in which case the matter shall be heard and disposed of as herein provided."

This clause states in plain language that after the board of control has determined that a certain municipality is chargeable with the support of an insane person it may apply to the board for relief from such order.   No limitation is made as to the time when such application may be made, nor as to the parties who may be brought before the board on such an application.   Now we are asked to say that the application can be made only when it is sought to charge some political entity other than that which was a party to the first proceeding, and to make an exception in favor of the party that was successful on the original hearing, because by so doing we will be carrying out the legislative intent.   Seeking after the intent of a body composed of 133 members is often a difficult and an elusive pursuit.   Ordinarily the safest guide to follow in seeking light on the subject is to take and apply the language used in its common and ordinary sense.   *Ashland v. Maciejewski,* 140. Wis. 642, 643, 123 N. W. 130, and cases cited.   If the legislature intended to make an exception such

as it is argued should be read into the law, it is fair to assume that such an exception would have been incorporated in the quoted clause.   It may be that, had the point raised been thought of by the legislature, such an exception would have been made; but if the omission was the result of a lack of foresight, it is not the function of a court to supply it, even though the language used may present an incongruous situation.   It is not the function of the court to legislate.   It seldom happens that, when a legislative body says one thing, a court is justified in saying that it meant something else.   It is better that our law makers should correct their own errors, if errors they make, than that a court should endeavor to do so by construction.   In the instant case it would be particularly inappropriate to hold that the law makers did not say just what they meant and all they meant.   They may have intended to permit a municipality, at any time it discovered that it was wrongfully charged with the support of an insane person, to go before the board of control and present its evidence, regardless of any former finding on the subject and regardless of the length of time that had elapsed since such finding was made.   As the statute was originally enacted (ch. 229, Laws of 1881) there could be no second application to the board of control to determine the legal residence of an insane person, except where the municipality charged in the first order was not the one named in the application therefor. It is significant that this provision was dropped out of the Revision of 1898; so that now the second application may be made although the party making it was named in the application for the first order as well as in the order itself.   If the legislative purpose was not as above indicated, the statute can easily be amended and in the meantime no great amount of harm will result from its enforcement as written.   We think we would be taking undue liberties with the language here used to read out of it the exception contended for, and that if

we attempted to do so we would be reading something into the statute that is not found there.

*By the Court.*—Judgment affirmed.

The following opinion was filed February 3, 1912:

VINJE, J. (*dissenting*).  Sec. 591, Stats. (1898), prescribes how counties may test before the state board of control the question of their liability to support an insane person who is an inmate of a county or state hospital.   The latter part thereof reads:

"From and after the making of such order such inmate's support shall be charged in accordance therewith; provided, that the county named in such order may, in like manner, apply to said board for relief from the burden thereby imposed, in which case the matter shall be heard and disposed of as herein provided."

Sec. 592, Stats. (1898), gives a party aggrieved by such order one year in which to appeal to the circuit court of the county to which the person named in such order is alleged to be chargeable.

In view of the policy of the law to end disputes about the same subject matter between the same parties, and of the fact that each county has one year in which to take an appeal— presumably ample time in which to ascertain the facts as to its liability,—it does not seem reasonable to so construe the statute as to permit the same parties to relitigate the same subject matter before the same tribunal *ad libitum.* Such a construction should not be put upon it if it will reasonably bear any other.   It is not straining the language of the proviso to construe it to give the right to the county named in the order to litigate its liability with the state or any county *other than the one it has already litigated it with.* This interpretation gives full force and effect to every word

of the statute, and is in harmony with the procedure relating to disputes in all forums, namely, progress towards an end. Under the procedure of this statute, as construed, it is impossible even to approach, much less to reach, the end of the dispute. If a county is dissatisfied with the order made it has an adequate remedy by appeal, and ample time in which to take it. That it should be given the option of appeal from the order to the circuit court, or of a retrial, as many times as it may choose, before the tribunal that made the order, seems anomalous. The legislature could have intended no such result, and the language used does not necessarily lead thereto. We have long had statutes of rest. We now have one of unrest—one that sanctions perpetual strife.

Winslow, C. J., and Marshall, J. We concur in the foregoing opinion by Mr. Justice Vinje.