PFINGSTEN, Respondent, vs. PFINGSTEN, imp., Appellant.

*October 27—November 14, 1916.*

*Married women: Separate estate: Divorce: Adultery of wife: Division of property derived from her husband: Statutes: Construction.*

1. Under sec. 2342, Stats., a wife may take title to property from her husband and hold it as her sole and separate estate; and under sec. 2372, no judgment of divorce can affect her right to such estate, nor can the court in such action divest her title thereto, except upon a division of property between the parties as provided in sec. 2364.

2. Under sec. 2364, Stats., alimony cannot be allowed to a divorced wife where the divorce is granted on the ground of adultery committed by her, but the division and distribution of property therein provided for may be made even though the divorce be granted for said cause.

3. In construing a statute the legislative purpose must prevail so far as it can be gathered from the language of the law by any reasonable construction.

4. When the literal meaning of a statute, though apparently plain and unambiguous, is absurd or unreasonable, ambiguity arises,. the presumption being that such literal meaning does not correctly voice the legislative purpose.

5. When ambiguity or obscurity exists in a statute, the court may look to its history, to all the circumstances intended to be dealt with, to the evils to be remedied, to its reason and spirit, to every part of the enactment, and may reject words, or read words in place which seem to be there by necessary or reasonable inference, and substitute the right word for one clearly wrong, and so find the real legislative intent, though it be out of harmony with or even contradict the letter of the enactment.

6. A thing which is within the intention of the lawmakers and by rules of construction can be read out of it, is as much within the statute as if it were there within the letter.

7. In construing a statute the revisers' notes may properly be referred to in determining the legislative intent.

8. In combining secs. 24 and 29, ch. 111, R. S. 1858, in sec. 2364, R. S. 1878, there was no intention to lessen the powers of the court in respect to property matters, or to preclude a division and distribution of estate as therein provided even when the divorce was granted for adultery of the wife.

9. In view of the history of the statute and the unreasonableness or absurdity of a contrary construction, it is *held* that the words "excepting that of adultery committed by the wife" in sec. 2364, Stats., do not reach forward and condition the clause commencing "or the court may finally divide," and that in said clause, between the words "the court" and the words "may finally divide," the words "in any case where alimony is not adjudged" may be read as in place by reasonable inference.

APPEAL from a judgment of the circuit court for Milwaukee county: W. B. QUINLAN, Judge. *Reversed in part.*

Action for a divorce on the ground of adultery of the wife. The plaintiff prevailed in the action. There was a ques-

tion of what should be done with the property possessed by the parties and what provision, if any, should be made for the guilty wife. There was a homestead valued at some $13,000, subject to a mortgage for $3,500, and a further mortgage to Adolph Kanneberg, defendant's lawyer, as security for his fees in this action and other matters. There was also some household furniture of a replacement value of some $3,500, and other personal property. There were no living children.

The court found that the wife was guilty of repeated acts of adultery, as charged in the complaint; that the household furniture was plaintiff's property and that the title thereto was in him, though the articles were in storage in the name of the wife; that the homestead property and some $2,000 worth of jewelry, possessed by the wife, were derived wholly from plaintiff; that she obtained a deed of the homestead from him in August, 1907; that it was subject to incumbrances to the amount of $3,500, for which he was liable, and there was a second mortgage of $5,000 given February 16, 1915, to her attorney, who received the same with full knowledge of the property having been wholly derived from plaintiff. The court further found that such attorney had performed services for her of the value of $700, and paid expenses in her behalf to the amount of $176.41.

On such findings the court held that plaintiff was entitled to judgment of divorce on the ground of the adultery of the wife; that she was not entitled to any alimony, or any part or portion of the property described; that the whole thereof should be treated as belonging to plaintiff and the title thereto, so far as vested in her, should be divested and vested in him. The court further concluded that the mortgage to the attorney should be declared null and void and he be required to release it of record; but that plaintiff should pay him $876.41. Judgment was so ordered and rendered. *Mrs. Pfingsten* appealed but Mr. Kanneberg did not.

*Adolph Kanneberg,* for the appellant.

For the respondent there was a brief by *Curtis & Mock*, and oral argument by *H. K. Curtis*.

MARSHALL, J. The main question on this appeal is whether, where a divorce is granted on the ground of adultery of the wife, the court is without power to make a division of property between the parties, but may, nevertheless, divest the wife of the separate estate which she has derived from the husband and transfer it to him.

That a wife may take title to property from her husband and hold it as her sole and separate estate is provided by sec. 2342, Stats. In that respect, the written law has been changed since *Kinney v. Dexter*, 81 Wis. 80, 51 N. W. 82, as counsel for appellant suggests. So there can be no question but what the real estate and other property respondent conveyed to appellant during their married life became her property, subject only to such power in respect thereto as can be found in the divorce statute, sec. 2364. That would, doubtless, be so without any express provision of law on the subject, but it is covered by sec. 2372, Stats., which provides that:

"No judgment nullifying a marriage or for a divorce of any kind shall in any way affect the right of a wife to the possession and control of her separate property, real or personal, except as provided in this chapter; and nothing contained in this chapter shall authorize the court to divest any party of his title in any real estate further than is expressly provided herein."

In the face of that statute, we must hold that the trial court erred in concluding, as seems to have been the case, that it did not have jurisdiction to either award alimony to appellant or to make a division of property between the parties, and yet holding that it had authority to divest her of all property derived from respondent and vest it in him. The statute, as will be seen, only provides for so dealing with property in

case of a division thereof between the parties. Where there is no warrant for such division, the feature of the statute, in respect to dealing with the wife's property derived from her husband, as part of the entirety to be distributed, has no vitality whatever. On that, let the statute (sec. 2364) speak for itself:

". . . the court may finally divide and distribute the estate, both real and personal, of the husband and so much of the estate of the wife as shall have been derived from the husband, between the parties and divest and transfer the title of any thereof accordingly, having always due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties and all the circumstances of the case; . . ."

The power, as regards division of property, is wholly a creature of the statute. The authority to take title from one and vest it in the other is dependable upon the express power to make a property distribution. For that the estate of the wife derived from her husband is regarded as his, but not otherwise. *Bacon v. Bacon,* 43 Wis. 197. The language "the court may finally divide and distribute the estate, . . . and divest and transfer the title of any thereof accordingly," very clearly means "the court may finally divide," etc., in which case may, if any, "divest and transfer the title of any thereof accordingly." There is nothing ambiguous about that language, therefore it must be taken as it reads.

It follows that it was erroneous and illogical to hold that there could be no division of property in case of a divorce from the wife on account of her adultery and yet her separate property could be taken from her and given to the husband because she acquired it from him.

We now turn to the main proposition in the case. Did the court below correctly read the statute in holding that it prohibits allowance of either alimony or a division of property in such circumstances as existed in this case?

That the allowance of alimony to a divorced wife is made conditional upon her fault not being that of adultery, is plain; but do the words "for any cause excepting that of adultery committed by the wife" also make the provision for a division of property depend upon the divorce not being granted because of such fault? That the condition is absolute as to alimony is not only clear from the statute, but has been so held from an early day. *State ex rel. Child v. Smith,* 19 Wis. 531. That the language of the statute, in its literal sense, covers both situations must be admitted, but often such sense does not correctly voice the legislative purpose. That must prevail in every case, so far as it can be gathered from the language of the law, by any reasonable construction thereof. *State ex rel. M., St. P. & S. S. M. R. Co. v. Railroad Comm.* 137 Wis. 80, 85, 117 N. W. 846. True, the plain mandate of a law must prevail even though it appear unreasonable, *Rowell v. Barber,* 142 Wis. 304, 125 N. W. 937; but whether the mandate is plain must often be determined with reference to "effects and consequences."

A statute may be plain and unambiguous in its letter, and yet, giving it the meaning thus suggested, it may be so unreasonable or absurd as to involve the legislative purpose in obscurity. *Rice v. Ashland Co.* 108 Wis. 189, 84 N. W. 189. In such case, or when obscurity otherwise exists, the court may look to the history of the statute, to all the circumstances intended to be dealt with, to the evils to be remedied, to its reason and spirit, to every part of the enactment, and may reject words, or read words in place which seem to be there by necessary or reasonable inference, and substitute the right word for one clearly wrong, and so find the real legislative intent, though it be out of harmony with, or even contradict, the letter of the enactment. A thing which is within the intention of the lawmakers and by rules for construction can be read out of it, "is as much within the statute as if it were within the letter." *School Directors v. School Directors,* 81 Wis. 428, 51 N. W. 871, 52 N. W. 1049; *Neacy v.*

*Milwaukee Co.* 144 Wis. 210, 128 N. W. 1063; *State ex rel. McGrael v. Phelps,* 144 Wis. 1, 9, 128 N. W. 1041; *State ex rel. Husting v. Board of State Canvassers,* 159 Wis. 216, 150 N. W. 542.

The cases referred to illustrate the extent of judicial license often and necessarily exercised in order to carry out the legislative purpose.   It should never be used to make a law, but may go to the furthest extent indicated, and must in some cases, in order to prevent the real legislative will from being defeated.

In the light of the foregoing as to how ambiguity may appear and how it may be solved, let us look at the reason of the statute.

The difference between the nature of alimony, and a division of property, furnishes a strong reason why the legislature must have intended to make the former absolutely conditional upon the fault of the wife not being adultery, and not so the latter.   The doctrine of alimony is very ancient. It is grounded on the natural obligation of the husband to support the wife which is not, necessarily, in a moral sense, regardless of written law, wholly removed by a judicial separation.   It is said to have been recognized long before there was any statute on the subject, though, as this court has said before, permanent alimony is wholly a creature of the written law.   That commonly, as here, provides therefor as to the divorced wife but not as to the divorced husband and the power of the court is restricted accordingly.   *Brenger v. Brenger,* 142 Wis. 26, 125 N. W. 109.

Since the basis for alimony is as indicated, it is most natural that the legislature should have considered, as commonly is the case, that a divorce for such gross misconduct as that of adultery of the wife ends all moral obligation to her and should absolutely terminate all legal obligation for her future support.   In general, such duty is continuous.   It does not rest, necessarily, on possession of property and is not limited

by financial circumstances existing at the time of the divorce, nor does jurisdiction of the court over the subject end with the provision in the divorce judgment. That may be revised, from time to time, as justice seems to require, the continuity of the obligation to support being the foundation of it. So the legislature expressly provided that the obligation to support the wife, should not necessarily terminate with the separation except in case of the divorce being granted upon the ground of her adultery.

The provision for a division of property does not wholly rest on the obligation stated; but rests, largely, upon the fact that, in many cases, the property possessed by the parties is the result of their joint efforts, so that, equitably, a part of it should go to each, not excluding the wife, necessarily, because of her fault being adultery. The division may be made according to the equities of the case, as regards the origin of the possessions, and the relations between the parties be completely ended as in case of a separation without any jurisdiction to award alimony.

Since, as we have heretofore said, no part of a wife's property which the husband had voluntarily settled upon her during their married life could be restored to him by the court upon a divorce being granted for her fault, unless the statute expressly so provided, 14 Cyc. 591; and statutes, in general, do not so provide and ours does not, except as the same is involved in the provision for a division of property, it seems that the legislature may have intended such provision to be general; affording the court a broad discretion so that, where justice requires it, especially in case of the property possessed by the parties being the result of their joint efforts, or the title thereto being vested in one of them but being derived from the other, the whole situation may be dealt with. That idea seems to be embodied in the closing words of the section: "having always due regard to the legal and equitable rights of each party, the ability of the husband, the special

estate of the wife, the character and situation of the parties
and all the circumstances." This broad field covers much
which could not reasonably, in all cases, deprive the guilty
wife, entirely, of any share in the estate possessed by the hus-
band, including that acquired by him from the wife, and the
estate derived by the latter from the former. Otherwise,
though the husband might have a large estate derived from
the wife, there would be no power to award any of it to her
and, though the wife might have a large estate, derived from
him, the court would be powerless to award him any of it.

It is not difficult to appreciate that a construction of the
statute which would necessitate such a result as the one above
suggested would, or might, cause great injustice in many
cases. Not only the wife might have acquired title to the
greater part, or even all, of the joint accumulations of the
parties during their married life, and the greater part, or all,
as well, of his prior possessions and property derived from
sources other than the efforts of either party; but the hus-
band might be likewise circumstanced. The guilt of the
wife might be characterized by many palliating circum-
stances, and yet she could be cast out into the world a most
pitiable object of charity, or, on the other hand, her guilt
might be characterized by the most aggravating circum-
stances, and yet she could go free and her unfortunate hus-
band be left, practically, irremediably robbed of the fruits of
years of his labor and his property otherwise acquired as
well. Would not a construction of the statute which would,
or might, produce such results be highly absurd? Would it
not shock one's conscience to be forced to the conviction that
the legislature intended any such thing? It seems so and
that is enough to render the statute ambiguous, though ob-
scurity of meaning be not otherwise disclosed, and call upon
us to endeavor, industriously, to read, reasonably, out of it
some other meaning without "violating the rules of language
or of law."

There is no more useful rule for perceiving obscurity of meaning in a statute than the one that, while ambiguity is an absolute condition of construction, such condition exists when the literal meaning is absurd or unreasonable, for it is always to be presumed, until the contrary unmistakably appears, that the legislature did not so intend. *In re Reeseville D. Dist.* 156 Wis. 238, 240, 145 N. W. 671. To seek by all rules of construction to avoid such a result does not violate the doctrine of *State ex rel. Monroe Co. v. Vernon Co.* 148 Wis. 274, 278, 134 N. W. 360; and *Schenck v. Sterling E. & C. Co.* 151 Wis. 266, 271, 138 N. W. 637, 769, and similar cases, that it is not the function of courts to supply omissions, or correct mistakes, or make or amend a statute to avoid or produce a particular result. It is one thing to do that and quite another to discover and effectuate the legislative words. If unreasonableness can create ambiguity, it would seem that we have it, manifestly, in the literal sense of the statute before us. Read as the trial court viewed it, it would be a most inhumane enactment. Hope is held out to the worst of criminals, by divine as well as man-made law, but the idea, advanced here, is that the legislature left for the guilty wife no hope whatever, regardless of circumstances, and that means, no hope whatever for the innocent husband as regards property matters, in the circumstances of this case.

We will now turn to the history of our divorce statute. That will throw some light on the question to be solved. Counsel for appellant has, with commendable industry, brought such history fully to our attention.

The territorial statute of 1839, at p. 140, § 4, is the beginning of our written law on the particular subject. It provided that, in case of a divorce for adultery of the wife, all personal estate should go absolutely to the husband, and the real estate of the wife should also so go for "life, in case they have had issue born alive of her body during the coverture,

otherwise during her natural life only, if he shall survive
her.   Provided, nevertheless, that the court may allow for
her sustenance so much out of the personal or real estate, as
they shall judge necessary." Thus, it will be seen, the real
estate of the wife, whether derived from the husband or not,
was not absolutely taken from her, and ample discretion was
vested in the court to provide for her, equitably, out of the
personal and real estate as well.

By the Revised Statutes of 1849, the written law, ch. 78,
secs. 24 and 29, took this form:

"Sec. 24.  Upon every divorce from the bond of matrimony,
for any cause excepting that of adultery committed by the
wife, and also upon every divorce from bed and board from
any cause, if the estate and property restored or awarded to
the wife, shall be insufficient for the suitable support and
maintenance of herself and such children of the marriage as
shall be committed to her care and custody, or if there be no
such estate and property, the court may further decree to her
such part of the personal estate of the husband, and such ali-
mony, out of his estate, as it shall deem just and reasonable,
having regard to the ability of the husband, and the character
and situation of the parties, and all the other circumstances
of the case."

"Sec. 29.  The court shall in all cases, subject to the pro-
visions of this chapter, regulate the division and distribution
of the estate, real and personal, between the parties, and the
allowance for alimony to the wife, or to her and the minor
children committed to her care and custody, according to
equity and good conscience, having always due regard to the
legal and equitable rights of each party, but nothing con-
tained in this chapter shall authorize the court to divest any
party of their title to or interest in any real estate, further
than is expressly specified herein."

Thus it will be seen, as pointed out by counsel for appel-
lant, that, notwithstanding a divorce for adultery of the wife
and want of power in that case to award her alimony, power
was recognized as yet existing to restore and award property
to her.   The statutes of 1849, without change, became

secs. 24 and 29, ch. 111, of the Revised Statutes of 1858. Such sections with sec. 21 of such chapter were in this form:

"Section 21. Whenever a nullity of a marriage, or a divorce from the bond of matrimony, for any cause excepting that of adultery committed by the wife, shall be adjudged, and when the husband shall be sentenced to imprisonment for life, and also upon every divorce from bed and board, the wife shall be entitled to the immediate possession of all her real estate in like manner as if her husband were dead."

"Section 24. Upon every divorce from the bond of matrimony, for any cause excepting that of adultery committed by the wife, and also upon every divorce from bed and board for any cause, if the estate and property restored or awarded to the wife shall be insufficient for the suitable support and maintenance of herself, and such children of the marriage as shall be committed to her care and custody, or if there be no such estate and property, the court may further adjudge to her such part of the personal estate of the husband, and such alimony out of his estate, as it shall deem just and reasonable, having regard to the ability of the husband and the character and situation of the parties, and all the other circumstances of the case."

"Section 29. The court shall, in all cases subject to the provisions of this chapter, regulate the division and distribution of the estate, real and personal, between the parties, and the allowance for alimony to the wife, or to her and the minor children committed to her care and custody, according to equity and good conscience, having always due regard to the legal and equitable rights of each party; but nothing contained in this chapter shall authorize the court to divest any party of their title to or interest in any real estate, further than is expressly specified herein."

By the revision of 1878, the law took this form, as it now stands:

"Section 2364. Upon every divorce from the bond of matrimony, for any cause excepting that of adultery, committed by the wife, and also upon every divorce from bed and board, the court may further adjudge to the wife such alimony out of the estate of the husband, for her support and maintenance,

and such allowance for the support, maintenance and education of the minor children committed to her care and custody, as it shall deem just and reasonable, or the court may finally divide and distribute the estate, both real and personal, of the husband, and so much of the estate of the wife as shall have been derived from the husband, between the parties, and divest and transfer the title of any thereof accordingly, having always due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties, and all the circumstances of the case; but no such final division shall impair the power of the court, in respect to revision of allowances for minor children, under the next preceding section."

"Section 2372. No judgment nullifying a marriage, or for a divorce of any kind, shall in any way affect the right of a wife to the possession and control of her separate property, real or personal, except as provided in this chapter; and nothing contained in this chapter shall authorize the court to divest any party of his title in any real estate, further than is expressly provided herein."

The revisers' notes, which may properly be referred to in determining the legislative intent, inform us that the purpose of sec. 2364 was to combine secs. 24 and 29, ch. 111, of the Revised Statutes of 1858, and the purpose of sec. 2372 was to supersede sec. 1 of such chapter, and partly, to embrace the last part of sec. 29 thereof, and limit power to transfer title in actions for divorce to that bestowed in the chapter on that subject.

Referring to the note to sec. 2372, there is nothing found in sec. 1, ch. 111, of the old statutes which is embodied in the new one. It was practically dropped out as unnecessary. The new section embraced, substantially, all the former sec. 29, commencing with the words, "But nothing contained in this chapter," etc., thus confining the power to divest and vest title in divorce actions to the provision in sec. 2364.

Turning to sec. 2364, it will be seen to contain, substantially, the provisions of the former sec. 29 in relation to alimony, also in relation to the maintenance and education of

children and to the distribution of property "having regard to the ability of the husband and the character and situation of the parties, and all the other circumstances of the case," those words being changed, evidently, without any purpose to substantially change the meaning, to this form, "having always due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties, and all the circumstances of the case."

On the whole, it seems quite evident that there was no purpose to make any change in the former statute by the revision of 1878 which would give the court less power in respect to property matters than it formerly possessed, which included power, as we read the old statute, sec. 29, to "regulate and distribute the estate, real and personal, of the parties" "subject to the provisions of this chapter" which did not preclude the restoration or awarding of property, in any case, to the divorced wife. In the face of the evident purpose of the revisers and the legislature to combine in sec. 2364 substantially what was in the former secs. 24 and 29, it cannot be that there was any thought of cutting the divorced wife off entirely as to property matters, in case of the separation being adjudged for adultery on her part. Probably the purpose was to make that plain which was somewhat involved before and to make a general provision for the distribution of property, in the discretion of the court, so as to, more effectually than before, protect "the legal and equitable rights of each party" considering "the ability of the husband, the special estate of the wife, the character and situation of the parties, and all the circumstances of the case."

Our conclusion is that the words "excepting that of adultery committed by the wife" do not reach forward and condition the clause commencing with the words "or the court may finally divide," etc.; that the unreasonableness of the opposite view, in the light of the history of the matter, should be deemed not to have been within the legislative intent. As we

have heretofore said, whatever is within the intent of the law-makers and can, by rules for construction, be read out of the legislative language, is as much within the words of the law as if literally there expressed. To so read such intent there-from, as we have heretofore said, words may be rejected which were obviously improperly used, or be read entirely outside of their literal scope, *Att'y Gen. v. West Wis. R. Co.* 36 Wis. 466, and words may be transposed, or read in place where there by reasonable or necessary inference.

Many illustrations of the foregoing are given in *Neacy v. Milwaukee Co.* 144 Wis. 210, 128 N. W. 1063, before cited. It was there said, supported by abundance of authority and guarding the principle that the court cannot, properly, make the law by construction: "Words necessary to be supplied should be deemed to be in place by necessary or reasonable implication, and words necessary to be displaced, so far as evidently inadvertently used, to bring out the sense mani-festly intended should be regarded as surplusage, and words necessary to be transposed to that end should be given their proper place, all by familiar rules for judicial construction;" and, quoting approvingly from a standard text-writer, fur-ther said: "The judicial interpreter may deal with careless and inaccurate words and phrases in the same spirit as a critic deals with an obscure or corrupt text, when satisfied, on solid grounds, from the context or history of the enact-ment, or from the injustice, inconvenience, or absurdity of the consequences to which it would lead, that the language thus treated does not really express the intention, and that his amendment probably does." It is appropriate to thus refer here to the broad scope of judicial power in the field of interpretation and construction, even at the expense of some repetition.

It seems that, in the section under discussion, the words, "in any case where alimony is not adjudged" may be read as in place by reasonable inference between the words "the court" and the words "may finally divide," etc., so that the

subject of division of property will have the appearance of
having been dealt with independently, instead of being tied
back to the words "for any cause excepting that of adultery
of the wife."

So treating the statute it would read, "Upon every divorce
from the bond of matrimony for any cause excepting that of
adultery committed by the wife," etc., "the court may
further adjudge to the wife such alimony," etc.; "or the
court may" in any case where alimony is not adjudged
"finally divide and distribute the estate, both real and per-
sonal, of the husband, and so much of the estate of the wife
as shall have been derived from the husband, between the
parties, and divest and transfer the title of any thereof ac-
cordingly, having always due regard," etc.

So reading the statute, it is relieved from the otherwise
unreasonable or absurd character and made to harmonize
with the previous history of the divorce laws.  It affords the
court somewhat more latitude than formerly, in harmony
with the progressive tendency to deal humanely and chari-
tably with erring women and unfortunates of either sex.  It
gives proper vitality to the words, "having always due regard
to the legal and equitable rights of each party, the ability of
the husband, the special estate of the wife, the character and
situation of the parties, and all the circumstances of the
case."

The reasons advanced by counsel for respondent in support
of the judgment complained of, though not specially referred
to, have had due attention.  They are all, in substance, cov-
ered by what has been said.  Their infirmity seems clear.
No better illustration could be given than the reference
to *Cole v. Cole,* 27 Wis. 531; *Hoernig v. Hoernig,* 109
Wis. 229, 85 N. W. 346, and other cases to demonstrate
that under sec. 2364, Stats., the estate, real and personal, of
the wife derived from the husband is to be treated as the
property of the husband in exercising the court's jurisdiction
to divide and distribute property.  There is no doubt about

that; but counsel failed to appreciate that such property is only so treated in the event of a division.    In this case the court held there could be no such division, and yet proceeded to exercise the jurisdiction conferred to be exercised solely upon such contingency.    Without it, the property of the wife, as we have heretofore said, derived by her through the voluntary act of the husband, is her separate estate, not to be interfered with in any way in a divorce action.    There was a suggestion to the contrary in *Donovan v. Donovan,* 20 Wis. 586, under the Revised Statutes of 1858, where it was intimated that in case of a divorce because of the adultery of the wife, the court had power to divest her title to real estate and confer so much as equity might require upon her husband. It was a personal suggestion of the justice who wrote the opinion as to a matter not involved in the case.    The decision of the court is in harmony with what we have said here.    Certainly no such power exists now except in case of a division of property as provided in the statute.

Defendant Kanneberg did not appeal, but his interest is so involved with that of appellant that it must abide a decision of the court below in the light of the law as we have declared it.    The judgment as to property must be wholly reversed and the cause be remanded for the trial court to exercise its discretion as to a division of property between the parties, including the property of appellant derived from respondent, keeping in mind that, for the time being, the title to all the property which the court divested appellant of, belongs to her and that the mortgage thereon is valid except as such title and mortgage shall be disturbed on a division of property under the statutes.

*By the Court.*—The judgment as to the property of the parties is reversed but as to the divorce it is affirmed, and the cause is remanded for further proceedings in accordance with the opinion, further evidence to be taken if the trial court shall deem that advisable.    Costs will be taxed on this appeal in favor of appellant.